**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **AMMON RA SUMRALL,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 5:21-CV-187 (MTT)** |
| | ) | |
| **GEORGIA DEPARTMENT OF** | ) | |
| **CORRECTIONS,** *et al.*, | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ORDER

   United States Magistrate Judge Stephen Hyles recommends denying Plaintiff Ammon Ra Sumrall's motion for partial summary judgment (Doc. 31) and granting the defendants' motion for summary judgment (Doc. 41).  Doc. 51.  Sumrall objects.  Docs. 52; 53.  Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews de novo the portions of the Recommendation to which he objects.[1]

   For the reasons stated, the Recommendation (Doc. 51) is **ADOPTED in part and REJECTED in part**.  Sumrall's Eighth Amendment and Fourteenth Amendment equal protection claims fail because he has not shown that Defendants Singleton and Ashley violated his constitutional rights, and Sumrall's Fourteenth Amendment due process and First Amendment claims fail because Singleton and Ashley are entitled to qualified immunity.  But issues of fact remain regarding whether Sumrall could

---

[1] Sumrall does not object to the Magistrate Judge's recommendation that summary judgment on his state law claim for intentional infliction of emotional distress is appropriate.  Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews this portion of the Recommendation for clear error.  The Court finds none.

accommodate his vegan diet without the Alternative Entrée Program ("AEP").  Thus, summary judgment on Sumrall's Religious Land Use and Institutionalized Persons Act ("RLUIPA") claim against the Georgia Department of Corrections ("GDC") is inappropriate.  Accordingly, the defendants' motion for summary judgment (Doc. 41) is **GRANTED in part and DENIED in part** and Sumrall's partial motion for summary judgment (Doc. 31) is **DENIED**.

## I. BACKGROUND

Sumrall's claims arise from his removal from the AEP, a vegan diet program, while incarcerated at Wilcox State Prison.  Docs. 31-2 ¶ 13; 31-3 ¶¶ 9, 15; 35 ¶ 13. Singleton is the warden of Wilcox State Prison and Ashley is the deputy warden.  Docs. 25 at 4; 41-2 ¶ 1.  Since the late 1990s, Sumrall began adhering to a vegan diet based on his religious beliefs in the African Sun God Ammon Ra.  Docs. 31-2 ¶ 2; 31-3 ¶ 7; 35 ¶ 2.  In 2007, Sumrall registered for the AEP.  Docs. 31-2 ¶ 4; 35 ¶ 4.  In August 2019, the defendants began removing inmates from the AEP if they purchased non-vegan food from the prison commissary.[2]  Docs. 31-2 ¶¶ 8-9; 35 ¶¶ 8-9.  Sumrall was removed from the AEP in August 2019 for purchasing non-vegan food from the prison commissary.  Docs. 31-2 ¶¶ 8-9; 35 ¶¶ 8-9; 35-1 at 10:12-24.  Sumrall reenrolled in the AEP but was removed again on July 29, 2020 for purchasing non-vegan food.  Docs. 31-2 ¶¶ 10, 14; 35 ¶¶ 10, 14.  Sumrall reenrolled in the AEP on October 20, 2020 and is currently in the program.  Docs. 31-2 ¶ 28; 35 ¶ 28; 35-1 at 16:22-23, 19:9-20:20.

The parties dispute whether Sumrall could accommodate his vegan diet without the AEP.  Docs. 41-4 ¶ 18; 45-1 ¶ 18.  The GDC argues that Sumrall could have eaten

---

[2] The GDC's Standard Operating Procedures did not include purchasing non-vegan food as a justification for removing inmates from the AEP until October 13, 2020.  Docs. 31-2 ¶ 23; 35 ¶ 23.

the vegan elements of the non-vegan food trays and purchased food from the prison commissary during the approximately 90 days he was removed from the AEP.  Docs. 41 at 3; 41-3 at 10-11 ¶ 6; 41-4 ¶ 18.  The GDC highlights Sumrall's extensive commissary purchase lists as evidence that Sumrall was not reliant on the AEP to accommodate his religious diet.  Doc. 41-4 ¶ 18.  Sumrall, on the other hand, argues that he did not eat the non-vegan food he purchased.  Docs. 35-1 at 71:18-72:5; 45-1 ¶ 18.  Rather, Sumrall claims he ate the vegan elements of the non-vegan food and resold the non-vegan elements to other inmates.  Docs. 35-1 at 71:18-72:5; 45-1 ¶ 18.  Sumrall contends that his diet while removed from the AEP was "inadequate" and resulted in "fatigue and other health issues."  Docs. 31-2 ¶ 22; 31-3 ¶ 26.

After his removal from the AEP, Sumrall brought claims under 42 U.S.C. § 1983, alleging violations of his First, Eighth, and Fourteenth Amendment rights, and RLUIPA. Doc. 25.  Sumrall's RLUIPA claim is predicated upon the denial of his "Special Religious Request."  Docs. 31-1 at 12-13; 52 at 12-13, 19-20.  Sumrall's "Special Religious Request" asked the GDC to (1) "offer [him] vegan meals"; (2) "allow [him] to order a pair of vegan athletic shoes"; (3) "allow [him] to have an Ankh"; and (4) "require the prison … to sell vegan food."  Doc. 31-10 at 3.  Sumrall's First Amendment claims are based on his 90-day removal from the AEP and Singleton's statement that Sumrall could eat without the AEP because he is "able to utilize and report to the dining hall and receive a non-vegan tray."  Docs. 31-1 at 5-8; 52 at 10-12, 16-17.  Sumrall claims Singleton's statement was an attempt to coerce him to eat non-vegan food and violate his religious beliefs.  Docs. 31-1 at 5-8; 52 at 10-12, 16-17.  Sumrall's Eighth Amendment claims are based on his 90-day removal from the AEP, which he contends resulted in a "Vitamin D

deficiency, low white blood cell count, and other ailments." Docs. 31-1 at 8-10; 52 at 4-7, 17. Sumrall's Fourteenth Amendment due process claims are based on Singleton's and Ashley's failure to provide him with a hearing prior to removing him from the AEP. Docs. 31-1 at 10-12; 52 at 9-10, 18. Finally, Sumrall's Fourteenth Amendment equal protection claims are based on his contention that while black inmates, such as himself, were removed from the AEP for purchasing non-vegan food from the prison commissary, white and Jewish inmates who purchased non-vegan food were not removed from the AEP. Docs. 45 at 15-18; 52 at 7-8, 19.

## II. DISCUSSION

### A. RLUIPA Claim

The Magistrate Judge recommends that the Court grant summary judgment on Sumrall's RLUIPA claim against the GDC. Doc. 51 at 11. Sumrall argues that the GDC violated RLUIPA when it denied his "Special Religious Request." Docs. 31-1 at 12-13; 52 at 12-13. Sumrall's "Special Religious Request" asked the GDC to (1) "offer [him] vegan meals"; (2) "allow [him] to order a pair of vegan athletic shoes"; (3) "allow [him] to have an Ankh"; and (4) "require the prison … to sell vegan food." Doc. 31-10 at 3. The GDC focused on Sumrall's first request, arguing that Sumrall's RLUIPA claim failed because he could accommodate his religious diet without the AEP based on his extensive prison commissary purchases. Doc. 41 at 15-16. The Magistrate Judge agreed. Doc. 51 at 14. Sumrall objects and argues that the Magistrate Judge's recommendation is incorrect because it "made absolutely no mention of Plaintiff's Special Religious Request." Doc. 52 at 13, 19-20.

While the Magistrate Judge did not explicitly reference Sumrall's "Special Religious Requests," the Recommendation does address Sumrall's claim that the GDC substantially burdened his religious rights by denying his request to sell vegan food, provide him with vegan shoes, provide him with an Ankh, and provide him with vegan meals.[3]  Doc. 51 at 2-3, 14-15.  The Magistrate Judge recommends denying Sumrall's requests because Sumrall's religious rights were not substantially burdened.[4]  Doc. 51 at 3 n.1, 14-15.  The Court agrees in part.  Sumrall has not established that his religious rights were substantially burdened by the GDC's denial of his request to sell vegan food, provide him with vegan shoes, or provide him with an Ankh.  However, issues of fact remain as to whether Sumrall could accommodate his vegan diet without the AEP and, as a result, whether Sumrall's religious rights were substantially burdened during the 90 days the GDC refused to provide him with vegan meals.

Sumrall's religious rights were not substantially burdened by the GDC's refusal to sell vegan food, provide him with vegan athletic shoes, or provide him with an Ankh. "[A] 'substantial burden' must place more than an inconvenience on religious exercise … [and] is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly."  *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004).  Because the GDC offers vegan meals through

---

[3] The Magistrate Judge analyzed the requests Sumrall made in his partial motion for summary judgment. Doc. 51 at 2-3, 14-15.  These requests are essentially identical to the requests Sumrall made in his "Special Religious Request."  *Compare* Doc. 31 at 1-2 *with* Doc. 31-10 at 3.  For example, Sumrall's partial motion for summary judgment requests that the Court "require Defendants to allow Plaintiff's family to order him a pair of vegan athletic shoes … [and] require Defendants to create store lists that display or otherwise inform prisoners of which products are vegan."  Doc. 31 at 1-2.

[4] The Magistrate Judge also recommends denying Sumrall's request because Sumrall did not exhaust his administrative remedies.  Doc. 51 at 3 n.1.  Exhaustion is not an appropriate basis for denying Sumrall's request because Sumrall alleged that he exhausted his administrative remedies and the defendants do not provide any evidence to the contrary.  Doc. 25 at 3-4.

the AEP, Sumrall has not established that the GDC's refusal to "sell" vegan meals is more than a "inconvenience."  Docs. 31-2 ¶ 3; 35 ¶ 3.  Furthermore, Sumrall does not provide any legal basis for concluding that the GDC's refusal to provide him with vegan shoes substantially burdened his religious rights.  Docs. 31-1 at 12-13; 45 at 18-19; 52 at 12-13, 19-20.  Sumrall's discussion of the "substantial burden" prong merely states that "[g]iven the fact that the GDC regularly allows non-vegan prisoners to order food and clothing … it cannot be disputed that plaintiff's request" for vegan athletic shoes "was reasonable" and the denial of that request "substantially burdened his ability to practice his religion."  Doc. 52 at 20.  However, Sumrall conceded that the GDC sells "rubber" shoes, but because they are not "athletic" shoes they do not satisfy his request.  Doc. 35-1 at 34:21-35:4.  As a result, Sumrall fails to address how the denial of vegan athletic shoes does anything more than "inconvenience" his religious exercise.  Finally, Sumrall admitted that the GDC sells Ankh necklaces and that this request is "moot."  Doc. 35-1 at 33:9-34:4; see also Benning v. Georgia, 845 F. Supp. 2d 1372, 1381 (M.D. Ga. 2012) (requiring the plaintiff to purchase a religious item from the prison commissary was not a substantial burden on the plaintiff's religious exercise).  In sum, Sumrall fails to demonstrate how the GDC's denial of his request to sell vegan food, provide him with vegan athletic shoes, and provide him with an Ankh necklace substantially burdened his religious exercise.

However, issues of fact remain regarding whether Sumrall could accommodate his vegan diet without the AEP and, as a result, whether Sumrall's religious rights were substantially burdened during the 90 days the GDC refused to provide him with vegan meals.  The GDC argues that Sumrall could have eaten the vegan elements of the non-

vegan food trays and purchased food from the prison commissary during his 90-day removal from the AEP.  Docs. 41 at 3; 41-3 at 10-11 ¶ 6; 41-4 ¶ 18.  Sumrall, on the other hand, contends that his diet while removed from the AEP was "inadequate" and resulted in "fatigue and other health issues."  Docs. 31-2 ¶ 22; 31-3 ¶ 26.

The Eleventh Circuit has held that an inmate's religious beliefs are substantially burdened when he is "forced to choose between abandoning his religious precepts … or suffering serious health consequences."  *Robbins v. Robertson*, 782 F. App'x 794, 802-03 (11th Cir. 2019)[5]; *see also United States v. Sec'y, Fla. Dep't of Corr.*, 2015 WL 1977795, at *11 (S.D. Fla. Apr. 30, 2015), *aff'd*, 828 F.3d 1341 (11th Cir. 2016) (finding that a policy which removed an inmate from the religious diet plan if he purchased food from the prison canteen that violated the inmate's religious diet requirements imposed a substantial burden on the inmate's religious beliefs); *Reed v. Bryant*, 719 F. App'x 771, 778 (10th Cir. 2017) (same).  Sumrall presents evidence that he could not accommodate his religious diet without the AEP.  Docs. 31-3 ¶¶ 19-26; 35-1 at 58:12-16.  For example, when asked whether his removal from the AEP meant "that there was no vegan food available to [him]" or "there was no food" at all, Sumrall testified that being removed from the AEP was "the same as no food."  Doc. 35-1 at 58:12-16.  Based on this testimony, a factfinder could conclude that Sumrall did not have access to an alternative source of food that complied with his religious diet.  Therefore, when the GDC removed Sumrall from the AEP he was forced to choose between eating food that

---

[5] The plaintiff in *Robbins* brought a claim under the First Amendment rather than RLUIPA.  782 F. App'x at 803.  But the Eleventh Circuit has "applied similar definitions of 'substantial burden' when assessing claims under both RLUIPA and the Free Exercise Clause."  *Id*. at 802 n.5; *Midrash*, 366 F.3d at 1226 ("The Supreme Court's definition of 'substantial burden' within its free exercise cases is instructive in determining what Congress understood 'substantial burden' to mean in RLUIPA.").  Consequently, although *Robbins* is an unpublished decision involving a claim under the First Amendment, its facts are very similar to those before the Court and its reasoning is persuasive.

violated his religious beliefs or facing malnutrition—a choice the Eleventh Circuit held constitutes a substantial burden on an inmate's religious exercise.[6]  *Robbins*, 782 F. App'x at 802-03.

But Sumrall received the relief he requested.  Based on Sumrall's "Special Religious Request," Sumrall requested that the GDC "offer [him] vegan meals."  Doc. 31-10 at 3; *see also* Docs. 25 ¶ 15; 31 at 2.  Sumrall was reenrolled in the AEP on October 20, 2020.  Docs. 31-2 ¶ 28; 35-1 at 16:22-23, 19:9-20:20; 35 ¶ 28.  As a result, Sumrall's request is likely moot.  *See Smith v. Owens*, 13 F.4th 1319, 1327 (11th Cir. 2021) (holding that the district court erred when it evaluated remedies not proposed by the plaintiff); *Sossamon v. Texas*, 563 U.S. 277 (2011) (holding that injunctive and declaratory relief are the only remedies available to inmates suing a state or its agencies under RLUIPA).

The Court **ORDERS** the parties to file supplemental briefs no later than March 1, 2023 addressing whether Sumrall's RLUIPA request to receive vegan meals is moot. For now, the GDC's motion for summary judgment on Sumrall's RLUIPA claims is **GRANTED** to this extent: the GDC did not substantially burden Sumrall's religious rights by denying his request to sell vegan food, provide him with vegan athletic shoes, and

---

[6] A factfinder might not believe Sumrall's self-serving statements that he could not accommodate his religious diet without the AEP, especially given that Sumrall purchased dozens of food items from the prison commissary to accommodate his religious diet prior to his removal from the AEP.  But it is the providence of the factfinder to resolve such factual disputes.  *See United States v. Stein*, 881 F.3d 853, 857, 858-59 (11th Cir. 2018).

Furthermore, the GDC's removal policy might qualify as the least restrictive means of furthering a compelling government interest.  *See Smith v. Owens*, 848 F.3d 975, 979 (11th Cir. 2017).  But the GDC did not make this argument.

provide him with an Ankh necklace.  Otherwise, the motion is **DENIED without prejudice.**

**B. Eighth Amendment Claims**

The Magistrate Judge recommends that the Court grant summary judgment on Sumrall's Eighth Amendment claims against Singleton and Ashley.  Doc. 51 at 6-8.  The Court agrees.  Sumrall's Eighth Amendment conditions of confinement claims fail because he has not presented evidence of an objective and unreasonable risk.  Sumrall objects to this conclusion because while he was removed from the AEP, he was diagnosed with "a vitamin D deficiency, low white blood cell count, [and] a number of painful ailments."  Doc. 52 at 4.  But Sumrall does not claim that the non-vegan food trays he was given were nutritionally inadequate.  Doc. 35-1 at 58:20-59:4.  Rather, Sumrall claims that *his* diet was inadequate because he was unable to eat the non-vegan food trays.  *Id*.

The Eleventh Circuit has held that while prison officials must provide inmates with "reasonably adequate food," a "well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required."  *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (internal quotations and citations omitted).  "Neither [the Eleventh Circuit] nor the Supreme Court have ever held that the *Eighth Amendment* requires prison officials to indulge inmates' dietary preferences—regardless of whether those preferences are dictated by religious, as opposed to non-religious, reasons."  *Robbins*, 782 F. App'x at 805 (emphasis added); *see also LaFevers v. Saffle*, 936 F.2d 1117, 1120 (10th Cir. 1991) (holding that "the mere denial of a [Seventh Day Adventist's] requested vegetarian diet is insufficient to establish a cognizable Eighth Amendment

claim" because he was not entitled "to obtain the diet of his choice"); *McEachin v. McGuinnis*, 357 F.3d 197, 199 (2d Cir. 2004) (affirming the dismissal of an inmate's Eighth Amendment claim based on the prison's failure to serve the inmate a religious diet for one week when the plaintiff failed to alleged that the non-religious food was nutritionally inadequate).

Because the Eighth Amendment only guarantees the right to nutritionally adequate food and because Sumrall does not claim that the non-vegan food he was given was nutritionally inadequate, he fails to satisfy the objective component of his Eighth Amendment claim.  Sumrall's reliance on *Robbins v. Robertson* does not, as Sumrall argues, require a different result.  Doc. 52 at 5; 2022 WL 80476 (M.D. Ga. Jan. 6, 2022).  In *Robertson*, the plaintiff challenged the nutritional adequacy of the vegan *and* non-vegan food.  2022 WL 80476, *6.  The court denied summary judgment to the defendants on the plaintiff's Eighth Amendment claim because the plaintiff offered evidence that *all* of his meal options were nutritionally inadequate.  *Id*.  Sumrall, on the other hand, admits that he is not challenging the nutritional adequacy of GDC's meals, vegan or non-vegan.  Doc. 35-1 at 58:20-59:12.  Accordingly, Singleton and Ashley are entitled to summary judgment on Sumrall's Eighth Amendment claims.

**C. Fourteenth Amendment Equal Protection Claims**

The Magistrate Judge recommends that the Court grant summary judgment on Sumrall's Fourteenth Amendment equal protection claims against Singleton and Ashley. Doc. 51 at 8-9.  The Court agrees.  Sumrall's Fourteenth Amendment equal protection claims fail because he has established neither that he was treated differently than any similarly situated prisoner, nor that Singleton and Ashley possessed discriminatory

intent when they removed him from the AEP.  Sumrall objects to this conclusion citing his testimony and the affidavits of two other prisoners.  Doc. 52 at 7-8.  But Sumrall's evidence is insufficient to support his equal protection claims because it lacks sufficient detail, is not based on personal knowledge, and includes inadmissible hearsay.

"To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318-19 (11th Cir. 2006).

Sumrall testified that "seven or eight" black prisoners were removed from the AEP after purchasing non-vegan food, but three white inmates, Ralph Benning, Michael Cwikla, and John Peak, purchased non-vegan food and were not removed from the AEP.  Doc. 35-1 at 44:5-7, 48:7-11.  Sumrall does not provide detail surrounding the circumstances of these prisoners' food purchases, such as when these prisoners purchased non-vegan food and whether Singleton and Ashley knew about these purchases.  The Court does not have enough information to determine whether these prisoners are similarly situated to Sumrall.  Furthermore, Sumrall's testimony is not based on facts that would be admissible in evidence.  "Rule 56(e) of the Federal Rules of Civil Procedure requires that affidavits that support or oppose summary judgment motions shall be made on personal knowledge, and shall set forth such facts as would be admissible in evidence.  This rule also applies to testimony given on deposition." *Macuba v. Deboer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999) (cleaned up).  Sumrall's testimony is based on his "discuss[ions]" with inmates in his dorm, which is inadmissible

hearsay.[7]  Doc. 35-1 at 41:23-44:7, 47:23-49:22; *see also Reeves v. Thigpen*, 879 F. Supp. 1153, 1163-66 (M.D. Ala. 1995).  Thus, Sumrall's testimony is insufficient to support his equal protection claims.

Cwikla, a white, Jewish prisoner in the AEP, testified by affidavit that "the Defendants did not remove [him] nor any other Jewish/Caucasian prisoner from the AEP even though [they] also bought (and buy) non-vegan store items."  Doc. 45-7 ¶ 4. Cwikla's testimony does not save Sumrall's claims because Cwikla is not a similarly situated prisoner.  To support an equal protection claim, a prisoner must be "similarly situated in all material respects."  *See Sweet*, 467 F.3d at 1318-19; *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1218 (11th Cir. 2019); *Martinez v. Hall*, 2020 WL 1069795, at *5 (S.D. Ga. Mar. 5, 2020), *report and recommendation adopted,* 2020 WL 1816497 (S.D. Ga. Apr. 9, 2020), *aff'd*, 848 F. App'x 864 (11th Cir. 2021) (applying the "similarly situated in all material respects" test to a prisoner's equal protection claim).  A similarly situated comparator will have engaged in the same basic conduct as the plaintiff.  *Lewis*, 918 F.3d at 1227.  Therefore, a prisoner that is "similarly situated in all material respects" to Sumrall would have been enrolled in the AEP and purchased non-vegan food before July 2020, when prison officials reviewed the prison commissary purchases list.  Doc. 41-2 ¶ 4.  Cwikla's affidavit includes a store receipt showing that he purchased non-vegan food on August 19, 2020; there is no evidence that Cwikla had purchased non-vegan food when prison officials reviewed the prison commissary purchase lists in July 2020.  Doc. 45-7 at 4.  Thus, Cwikla is not "similarly situated in all

---

[7] "Inadmissible hearsay is an out-of-court statement, not otherwise excepted under the Federal Rules of Evidence, offered to prove the truth of the matter asserted therein."  *Ashley v. S. Tool Inc.*, 201 F. Supp. 2d 1158, 1164 n.7 (N.D. Ala. 2002) (citing *Macuba v. Deboer*, 193 F.3d 1316, 1322 n.11 (11th Cir.1999); Fed. R. Evid. 801-804)).

material respects," because he purchased non-vegan food in August 2020—after prison officials reviewed the prison commissary purchase lists.[8]

America, a black prisoner, testified by affidavit that "[w]hite and Jewish prisoners … bought non-vegan store goods, but the Defendants didn't remove any of them from the AEP."  Doc. 45-8 ¶ 4.  This conclusory statement is insufficient to support Sumrall's equal protection claim.  America does not provide any information about the circumstances surrounding these "white and Jewish" prisoners' purchases (e.g., names, dates, circumstances, decision-makers) that may have impacted whether these prisoners remained in the AEP.  For example, America does not aver that Singleton and Ashley knew these prisoners were buying non-vegan food.  Thus, these prisoners, like Cwikla, could have purchased non-vegan food after prison officials reviewed the prison commissary purchase lists, which would explain why they remained in the AEP.  As a result, America's testimony does not provide enough information to determine whether these prisoners are similarly situated to Sumrall.

Additionally, America does not aver the basis for his knowledge.  *Reeves*, 879 F. Supp. at 1164 ("Because affidavits proffered in opposition to a motion for summary judgment must be based upon personal knowledge, a statement merely indicating that an affidavit is based upon information and belief is insufficient as a matter of law.").  For example, in *Reeves*, the plaintiff, an African American corrections officer, was discharged after she was arrested for shoplifting.  *Id*. at 1160-61.  The plaintiff brought an equal protection claim alleging that similarly situated white officers had not been

---

[8] But even if Cwikla is a similarly situated prisoner, a single comparator is likely insufficient to establish an equal protection claim.  *See Lewis*, 918 F.3d at 1228 n.14 (noting that the number of comparators can be a relevant factor when determining whether the defendant engaged in unlawful discrimination).

terminated after being arrested. *Id*. In opposition to the defendant's motion for summary judgment, the plaintiff submitted an affidavit where she named three other white officers that were arrested but not terminated. *Id*. at 1162 n.4. The court concluded that because the plaintiff had personal knowledge of the facts in her statement, but not "personal knowledge *of the events described in that statement*," the affidavit could not be considered on the motion for summary judgment. *Id*. at 1163 (emphasis added). Similarly, America does not aver that he has personal knowledge of the events described in his statement. Rather, America asserts in a conclusory fashion that Singleton and Ashley removed black but not white or Jewish prisoners from the AEP and "conclusory allegations without specific supporting facts have no probative value." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Therefore, America's affidavit is insufficient to support his equal protection claim.[9]

In any event, it is undisputed that Sumrall purchased from the commissary non-vegan food, and he has no evidence to dispute Ashley's declaration testifying that he was removed from the AEP for that reason. Doc. 41-2. And while Sumrall quarrels with Ashley's testimony that prisoners of various races and religions were removed from the AEP at the same time, for the same reason, he has not refuted that testimony. In short, there is no evidence that Singleton and Ashley acted with discriminatory intent. *See Sweet*, 467 F.3d at 1318-19. Accordingly, Singleton and Ashley are entitled to summary judgment on Sumrall's Fourteenth Amendment equal protection claims.

---

[9] Cwikla's general statement that "other Jewish/Caucasian prisoners" have not been removed from the AEP is insufficient for the same reasons—it lacks sufficient detail and is not based on personal knowledge. Doc. 45-7 ¶ 4.

**D. Qualified Immunity**

The Magistrate Judge recommends that the Court grant summary judgment on Sumrall's Fourteenth Amendment due process and First Amendment claims against Singleton and Ashley.  Doc. 51 at 9-15, 18-19.  The Court agrees.  Sumrall's Fourteenth Amendment due process and First Amendment claims fail because Singleton and Ashley are entitled to qualified immunity.

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply."  *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009)).  To meet this burden, a plaintiff typically must establish that "the officer's conduct amounted to a constitutional violation" and "the right violated was 'clearly established' at the time of the violation."  *City of W. Palm Beach*, 561 F.3d at 1291.

*1. Discretionary Authority*

Singleton and Ashley acted within their discretionary authority when they removed Sumrall from the AEP.  *See* Doc. 51 at 19.  "To establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority."  *Est. of Cummings v. Davenport*, 906 F.3d 934, 940

(11th Cir. 2018) (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)). "In applying each prong of this test, [the Court] look[s] to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017) (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004)). "[A] government official can prove he acted within the scope of his discretionary authority by showing 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" *Est. of Cummings*, 906 F.3d at 940 (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)).

It is rarely disputed that a defendant acted within his discretionary authority, and the defendants reasonably assumed that issue was undisputed here. *See* Doc. 41 at 18-19. But Sumrall contends that Singleton and Ashley somehow left the broad bounds of their discretionary authority as correctional officers when they removed him from the AEP. Doc. 52 at 14-15. Sumrall's arguments are without merit. Prison officials, such as Singleton and Ashley, have the authority to remove inmates from the AEP. Docs. 31-2 ¶ 7; 35 ¶ 7; 41-3 at 2 ¶¶ 15-16. Sumrall acknowledges that prison officials have the authority to remove inmates from the AEP; rather, Sumrall disputes that the manner in which *he* was removed was lawful. Docs. 35-1 at 51:22-54:5; 45 at 3-6; 52 at 14-15. But the question is not whether it was within the defendants' authority to commit an allegedly unlawful act. *Mikko*, 857 F.3d at 1144. Framing the inquiry in that manner

conflates the distinct questions of whether the defendants acted lawfully with the question of whether they acted within the scope of their discretion. *Sims v. Metro. Dade Cnty.*, 972 F.2d 1230, 1236 (11th Cir. 1992). Clearly, Singleton and Ashley, the warden and deputy warden of Wilcox State Prison, could remove Sumrall, an inmate, from the AEP. Docs. 35-1 at 51:22-54:5; 45 at 3-6; 52 at 14-15. And even if, as Sumrall contends, removing Sumrall from the AEP for purchasing non-vegan food was contrary to prison policy, that fact is not dispositive. *Gaillard v. Commins*, 562 F. App'x 870, 873 (11th Cir. 2014) ("[A]n officer may act within his discretionary function even when he is off-duty or when his conduct possibly violates a department policy."). In short, Singleton and Ashley were acting within their discretionary authority when they removed Sumrall from the AEP.

  *2. Fourteenth Amendment Due Process Claims*

  Singleton and Ashley are entitled to qualified immunity on Sumrall's Fourteenth Amendment due process claims because Sumrall has not demonstrated that they violated his constitutional rights or that the law is clearly established.

  "[A] § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). The Eleventh Circuit recognizes two situations where a prisoner may be further deprived of his liberty such that due process is required. *Kirby v. Seigelman*, 195 F.3d 1285, 1290-91 (11th Cir. 1999). Relevant here, a liberty interest can arise when the state has consistently provided a benefit to a prisoner and "the deprivation of that benefit imposes an atypical and significant hardship

on the inmate in relation to the ordinary incidents of prison life." *Id*. at 1291 (internal quotation marks and citation omitted).

Sumrall has not demonstrated that his temporary suspension from the AEP constitutes the deprivation of a protected liberty interest. While prisons "should accommodate an inmate's religious dietary restrictions," those dietary preferences are "subject to budgetary and logistical limitations" and should only be accommodated "when the belief is truly held." *Hathcock v. Cohen*, 287 F. App'x 793, 801 (11th Cir. 2008) (cleaned up) (holding that the temporary denial of religious meals resulting from an inmate's failure to provide information to confirm the sincerity of his religious beliefs was insufficient to demonstrate a First Amendment violation). And the "temporary loss of privileges does not rise to the level of a protected liberty interest." *Moulds v. Bullard*, 345 F. App'x 387, 396 (11th Cir. 2009) (concluding that the temporary denial of one meal per day was insufficient to support a due process claim).[10]  Thus, inmates do not have a liberty interest in remaining enrolled in the AEP and the temporary suspension of Sumrall's access to the program did not violate his due process rights. *See, e.g.*, *Greer v. Dowling*, 2017 WL 8222640, at *4 (W.D. Okla. June 22, 2017), *report and recommendation adopted*, 2018 WL 1322050 (W.D. Okla. Mar. 14, 2018), *rev'd on other grounds*, 947 F.3d 1297 (10th Cir. 2020) ("[T]he deprivation of a religious diet for a short time does not implicate a constitutionally protected liberty or property interest."); *Daly v. Davis*, 2009 WL 773880, at *2 (7th Cir. 2009) (same); *Russell v. Wilkinson*, 79 F. App'x 175, 178 (6th Cir. 2003) (same); *Dove v. Broome Cnty. Corr. Facility*, 2011 WL 1118452, at *12 (N.D.N.Y. Feb. 17, 2011), *report and recommendation adopted*, 2011

---

[10] Although *Hathcock* and *Moulds* are unpublished decisions and thus non-binding, their facts are very similar to those before the Court and their reasoning is persuasive.

WL 867072 (N.D.N.Y. Mar. 10, 2011) (same); *Reed v. Bryant*, 2019 WL 3939068, at

*12-13 (W.D. Okla. Jun. 4, 2019) (same).

Sumrall argues the Magistrate Judge improperly relied on *Reed* and *Hathcock*.

Doc. 52 at 9-10.  Sumrall contends that *Reed*, 2019 WL 3939068, at *12-13 (W.D. Okla.

Jun. 4, 2019), a district court case decided in 2019, was "reversed" by the Tenth Circuit

in 2017.  Doc. 53 at 3-5; *Reed*, 719 F. App'x at 773.  While discussion of unreported

Tenth Circuit decisions is probably unnecessary, the fact is that the Tenth Circuit did not

hold that placement on a religious dietary program constituted a protected liberty

interest.  *Reed*, 719 F. App'x at 777.  Rather, the Tenth Circuit remanded the case to

the district court to make this determination.  *Id*.

With regard to *Hathcock*, Sumrall argues it is distinguishable because *Hathcock*

involved a pretrial detainee "while [he] had been on the AEP over 10 years."  Doc. 52 at

9; 287 F. App'x at 795.  Thus, Sumrall contends that his extended time on the AEP

means that his removal constituted "an atypical and significant hardship."  Doc. 52 at 9-

10; *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Kirby*, 195 F.3d at 1291.  While the

plaintiff in *Hathcock* only requested religious meals for a few days and Sumrall "had

been on the AEP over 10 years," this difference is not material.  Doc. 52 at 9; 287 F.

App'x at 801.  For example, in *Greer* the plaintiff was enrolled in a kosher diet program

for three years.  2017 WL 8222640, at *3.  The court held that the prison did not violate

the plaintiff's due process rights by removing him from the religious diet program for 120

days following his consumption of non-kosher food.  *Id*. at *4-5; *see also Reed*, 2019

WL 3939068, at *1-2, 12-13 (concluding that an inmate enrolled in a kosher diet

program for three years and removed for 78 days did not experience an atypical and

significant hardship).  Thus, Sumrall's reliance on the AEP for "over 10 years" does not change the Court's conclusion.

Furthermore, the Magistrate Judge relied on *Hathcock*, which analyzed a *First Amendment claim*, only for the proposition that jails and prisons can inquire into the sincerity of a prisoner's religious beliefs before accommodating their religious requests. Doc. 51 at 10; 287 F. App'x at 799-801.  This principle applies to pretrial detainees *and* convicted prisoners.  *See Bell*, 441 U.S. at 545; *Osuna v. Clark*, 2007 WL 2461903, at *2 n.1 (M.D. Ala. Aug. 29, 2007) ("[T]his court will rely on cases interpreting … the First Amendment's protections of religious freedom, and not the Fourteenth Amendment's guarantee of due process, when addressing the plaintiff's claims for relief because the standard for violations of the … First Amendment[] appl[ies] to pretrial detainees through the Due Process Clause of the Fourteenth Amendment.").

In any event, when analyzing Sumrall's due process claim, the Magistrate Judge applied the *Sandin* standard, the same standard Sumrall urges the Court to apply. Docs. 51 at 10; 52 at 2.  Under this standard the Magistrate Judge concluded that the deprivation of AEP meals for a short period of time did not pose "an atypical and significant hardship."  Doc. 51 at 10.  And the Court, as discussed above, agrees.

Even if Singleton and Ashley violated Sumrall's due process rights, Sumrall cites no clearly established law demonstrating that an inmate's temporary suspension from a religious diet program constitutes the deprivation of a protected liberty interest.  A plaintiff can show a right is clearly established in three ways: first, by pointing to "relevant case law at the time of the alleged violation that would have made it obvious to the officer that his actions violated federal law."  *J W ex rel. Tammy Williams v.*

*Birmingham Bd. of Educ.*, 904 F.3d 1248, 1259 (11th Cir. 2018).  Relevant case law is a published opinion from the United States Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court.  *Id*. at 1260 n.1; *Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002).  Second, a plaintiff "can identify a broader, clearly established principle that should govern the novel facts of the situation."  *J W ex rel. Tammy Williams*, 904 F.3d at 1259.  Third, the plaintiff "can show that the conduct at issue so obviously violated the Constitution that prior case law is unnecessary."  *Id*. at 1259-60.

Here, the conduct at issue is the defendants' decision to remove inmates from the AEP, without first providing a hearing, because those inmates purchased non-vegan food from the prison commissary.  *See* Docs. 31-1 at 12; 45 at 15.  Sumrall argues that his right to notice and a hearing before being removed from the AEP was clearly established because "the concept of notice and fair warning is so deeply rooted in American jurisprudence."  Doc. 45 at 14; *see also* Doc. 52 at 9-10.  But such general propositions rarely are sufficient, and general due process protections are clearly inadequate to establish that it would have been obvious to Singleton and Ashley that removing Sumrall from the AEP, without first conducting a hearing, violated his due process rights.  *See Corbitt v. Vickers*, 929 F.3d 1304, 1316 (11th Cir. 2019) (holding the district court erred when relying on a general proposition to clearly establish the law in an excessive force case).  Instead, Sumrall must cite binding case law that clearly establishes the defendants' conduct was unlawful.  *See Plumhoff v. Rickard*, 572 U.S. 765, 780 (2014).  He has not done so.  Accordingly, Singleton and Ashley are entitled to summary judgment on Sumrall's Fourteenth Amendment due process claims.

### 3. First Amendment Claims

Singleton and Ashley are also entitled to qualified immunity on Sumrall's First Amendment claims because Sumrall cites no clearly established law demonstrating that using commissary purchases as a proxy to judge the sincerity of a prisoner's stated religious beliefs violates the First Amendment.  Again, Sumrall does not cite a published, factually similar case from the Eleventh Circuit, the Georgia Supreme Court, or the United States Supreme Court.  Rather, he relies on *Smith v. Hatcher*, an unpublished district court opinion, and *Robbins*, an unpublished Eleventh Circuit opinion.  Docs. 45 at 8; 52 at 5; 2021 WL 6006298, at *1 (S.D. Ga. Dec. 20, 2021); 782 F. App'x at 802-03.  But unpublished circuit and district court cases cannot define clearly established law.  *Vinyard*, 311 F.3d at 1351; *JW*, 904 F.3d at 1260 n.1; *see also Crocker v. Beatty*, 995 F.3d 1232, 1241 n.6 (11th Cir. 2021).  As a result, Singleton and Ashley are entitled to qualified immunity.  *See also Hill v. Hill*, 2022 WL 2793371, at *7 (S.D. Ga. June 24, 2022), *report and recommendation adopted*, 2022 WL 2793089 (S.D. Ga. July 15, 2022) ("The Court has not identified any cases which would clearly establish the use of commissary purchases to gauge sincerity violates clearly established law [under the First Amendment].").  Accordingly, Singleton and Ashley are entitled to summary judgment on Sumrall's First Amendment claims.

### III. CONCLUSION

For the reasons stated, the Recommendation (Doc. 51) is **ADOPTED in part and REJECTED in part**.  Sumrall's Eighth Amendment and Fourteenth Amendment equal protection claims fail because he has not shown that Defendants Singleton and Ashley violated his constitutional rights, and Sumrall's Fourteenth Amendment due

process and First Amendment claims fail because Singleton and Ashley are entitled to qualified immunity.  But issues of fact remain regarding whether Sumrall could accommodate his vegan diet without the AEP.  Thus, summary judgment on Sumrall's RLUIPA claim against the GDC is inappropriate.  Accordingly, the defendants' motion for summary judgment (Doc. 41) is **GRANTED in part and DENIED in part** and Sumrall's partial motion for summary judgment (Doc. 31) is **DENIED**.

> **SO ORDERED**, this 17th day of February, 2023.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
